RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0078P (6th Cir.)
File Name: 01a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RUBY E. HESTON,
        *Plaintiff-Appellant,*

        *v.*                              No. 99-4400

COMMISSIONER OF SOCIAL
SECURITY,
        *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00644—George C. Smith, District Judge.

Argued: November 30, 2000

Decided and Filed: March 26, 2001

Before: DAUGHTREY and MOORE, Circuit Judges;
CARR, District Judge.[*]

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**COUNSEL**

**ARGUED:** Susan J. Haas, Zanesville, Ohio, for Appellant. Cynthia A. Brandel, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee. **ON BRIEF:** Susan J. Haas, Zanesville, Ohio, for Appellant. Cynthia A. Brandel, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

---

**OPINION**

---

JAMES G. CARR, District Judge. Claimant-Appellant, Ruby E. Heston ("Heston") filed an application for disability benefits which was denied, and now appeals the district court's decision upholding the denial of benefits. Heston challenges the decision of the Administrative Law Judge (ALJ) on three grounds: 1) failure to state reasons for rejecting the report of Dr. John Haun, plaintiff's treating physician; 2) lack of substantial evidence to support the ALJ's finding that her testimony was not credible; and 3) wrongful application of Rule 203.12 of the Medical-Vocational Guidelines (instead of Rule 202.02) in the determination that she can perform substantial gainful work.

The Commissioner argues that it is not necessary to reach the merits of Heston's claims because of her failure to challenge the preliminary finding at step two of the sequential process that she does not have a severe impairment. In addition, the Commissioner asserts that Heston's claims are without merit.

For the following reasons, we **AFFIRM** the judgment of the district court.

jobs Heston could perform by relying solely on either Vocational Rule 203.12 or 202.02.

Social Security Ruling 83-12 applies when a claimant's abilities fall between the regulatory guidelines for exertional limitations: "In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly [vocational specialist] assistance is advisable for these types of cases." 1983-1991 Soc.Sec.Rep.Ser. 36, 1983 WL 31253 (S.S.A.).

The ALJ discussed Heston's limitations with the vocational expert. (J.A. at 60). The ALJ posed a hypothetical with a person who was not able to lift above fifty pounds on occasion or not able to lift twenty-five pounds frequently. The vocational expert concluded that there were approximately 2,000 jobs available. The ALJ then asked the vocational expert about job opportunities for someone who could lift up to thirty pounds, had problems climbing, crouching, kneeling and crawling. The vocational expert stated that there were about 3,600 jobs available for someone with those limitations. (*Id*. at 61).

The ALJ based his finding of facts on the vocational expert's determination that there were 3,600 jobs available for someone with Heston's capabilities. (*Id*. at 19-20). Heston's argument that the ALJ improperly relied on Vocational Rule 203.12, in light of the ALJ's consideration of Heston's specific vocational profile and residual functioning capacity, is without merit. (*Id*.).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

## PROCEDURAL AND FACTUAL BACKGROUND

Heston was born on February 6, 1936, and last worked on November 17, 1992. (J.A. at 34). Heston can read and write, though her writing skills are limited. (*Id*. at 36). Heston worked most recently for a dry cleaner as a counter assistant and presser. (*Id*.). Previously, she had worked caring for patients in a nursing home and as a housekeeper. (*Id*. at 38-39). She stopped working in November 1992 because she could no longer breathe the dry cleaner's fumes. (*Id*. at 37-38). Heston's disability period thus runs from November 17, 1992, the date she stopped working, to June 30, 1994, the date she was last insured. (*Id*. at 13).

### A. Procedural Background

Heston filed for disability benefits on July 19, 1995. (*Id*. at 65-68). She claims to be disabled due to shortness of breath, asthma, excessive heartbeat, diverticulitis, high blood pressure, pancreatitis, and curvature of the spine. (*Id*. at 88). Heston's original application for benefits was denied on October 20, 1995, on grounds that Heston did not present enough medical evidence to show the severity of her condition. (*Id*.). Heston filed a request for reconsideration, which was also denied. (*Id*. at 100-02).

Heston requested a hearing before an ALJ. Following a hearing on April 28, 1997, the ALJ issued a decision on June 21, 1997, in which he found that Heston had no "severe impairment" as of June 30, 1994, the date she was last insured. (*Id*. at 19). Further, the ALJ found that even if Heston could demonstrate a severe impairment, she would be precluded from receiving disability benefits because the testimony of a vocational expert showed that she could still perform a significant number of jobs in the local economy. (*Id*. at 13).

Heston filed a "Letter of Contentions" with the Appeals Council of the Social Security Administration contesting the ALJ's decision. (*Id*. at 189-92). In the letter, Heston argued that neither the ALJ's finding that she was not severely

impaired nor his finding that she could still perform substantial gainful activity was supported by substantial evidence. (*Id*.). The Appeals Council denied Heston's request for review. (*Id*. at 4-6).

Heston then filed her complaint in the Southern District of Ohio. In that complaint, Heston raised the same three claims that she asserts on appeal. She did not challenge the ALJ's predicate finding that she does not suffer a substantial impairment. The Commissioner's answer to the complaint and brief in support of its motion for summary judgment did not raise the issue of Heston's failure to challenge that predicate finding as grounds for not considering her claims on their merits. The Magistrate Judge filed a Report and Recommendation affirming the ALJ's decision. (Brief of Appellant, at 49).

Heston filed Objections to the Magistrate's Report, based on the same three claims. Once again, the Commissioner failed to raise the issue of Heston's failure to challenge the predicate finding of no substantial impairment. The district court adopted the decision of the Magistrate Judge's Report and Recommendation. (*Id*. at 45).

## B. Heston's Medical History

In 1965, Dr. Haun examined Heston and determined she had bronchiectasis. (*Id*. at 112). Dr. Haun recommended surgery, and Heston had one-third of her left lung removed. (*Id*.). Dr. Haun remained Heston's physician until February 1992. Over the years, Dr. Haun treated Heston for bronchiectasis, high blood pressure, acute pancreatitis, diverticulitis, a hernia, a hysterectomy, surgery on her ureter, frequent recurrent bronchitis, and chronic purulent sputum production. (*Id*.).

Dr. Haun provided a three-page summary of Heston's medical history on a form provided by the Bureau of Disability Determination. The three-page summary is the only evidence from Dr. Haun in the administrative record. (*Id*. at 111). In the questionnaire, Dr. Haun indicated that,

the Secretary determines that the plaintiff is incapable of performing past relevant work, these grids are used to determine whether plaintiff can perform other jobs in the national economy. The grid allows the Secretary to take "administrative notice" that plaintiff has met the requirements to perform certain jobs in the economy. *Id*.

The ALJ made the following findings of fact:

11. Section 404.1569 of Regulations No. 4 and Vocational Rule 203.12 . . . . directs a conclusion that, considering the claimant's residual functioning capacity, age, education, and work experience, she was "not disabled."

12. Applying the above-cited rule as a framework for decisionmaking, and considering the claimant's vocational profile and residual functional capacity, she could have performed approximately 3,600 medium range jobs such as rental clerk, photocopy machine operator, and marker. The jobs identified exist in proportionate numbers throughout the national economy as well. (J.A. at 19-20).

Heston argues that the ALJ improperly applied the Vocational Rule 203.12 for determining the number of jobs Heston could perform. Vocational Rule 203.12 is relied upon if it is determined that claimant is capable of performing medium work. A claimant is capable of performing medium work if they are capable of lifting up to fifty pounds. 20 C.F.R. § 404.1567(c). Vocational Rule 202.02 applies if the claimant is capable of performing only light work. Light work is defined as lifting no more than twenty pounds. 20 C.F.R. § 404.1567(b).

Dr. Tripathi stated that Heston can lift up to thirty pounds. (J.A. at 160). Dr. Haun's report also stated that Heston has a limited ability to lift, but he does not provide a specific weight limit. Heston's ability to lift thirty pounds falls between the definitions of light and medium work. Therefore, the ALJ could not accurately make a determination of which

Although the ALJ should have included a reference to the report in its findings, the failure to do so, in this case, was harmless error.

## C. The ALJ's Finding That Heston's Testimony Was Not Credible Was Based on Substantial Evidence

Heston argues that the ALJ incorrectly determined that her testimony, regarding limitations based on shortness of breath and fatigue, was not supported by evidence in the record. A circuit court, however, may not review a determination of credibility. "It [i]s for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) (*citing Celebrezze v. Sutton*, 338 F.2d 417, 421 (8th Cir. 1964)).

The ALJ's determination that the symptoms did not render Heston disabled is also supported by substantial evidence in the record. The ALJ considered Heston's testimony concerning fatigue and shortness of breath in light of other evidence that Heston regularly walks around her yard for exercise, rides an exercise bicycle, goes to church, goes on vacation, cooks, vacuums, and makes beds. (*Id*. at 16). The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform other tasks.

## D. The ALJ Did Not Improperly Rely on Rule 203.12 of the Medical-Vocational Guidelines in Determining Heston's Vocational Profile

To deny Heston's application for disability benefits, the Commissioner must show that the claimant cannot perform any substantial gainful work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 20 C.F.R. § 404.1566(a).

Medical-Vocational Guidelines ("grids") are utilized by the Secretary during the final step of the disability decision. *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). After

although he had no current information, he believed Heston would have trouble bending, lifting, and carrying. (*Id*. at 113).

After Dr. Haun retired, Heston became a patient of Dr. Colby. During the period of alleged disability relevant to this litigation, Dr. Colby treated Heston several times for bronchitis. (*Id*. at 118-34).

In December 1993, Heston complained of weakness, fatigue, and heart palpitations. Because Heston had a history of arrhythmia, Dr. Colby administered a stress test, which was terminated after six and a half minutes because of Heston's shortness of breath and fatigue. (*Id*. at 134). The test revealed normal cardiac activity, and after the test, Dr. Colby discontinued Heston's arrhythmia medication because she had performed so well. He also fitted Heston with a Holter monitor for twenty-four hours, which did not reveal any significant arrhythmia. Heston continued to see Dr. Colby periodically for symptoms of chest congestion and bronchitis, and for recurrent bouts of pancreatitis. (*Id*. at 118-34).

Heston's last visit with Dr. Colby was in March of 1994. In response to a Bureau of Disability Determination questionnaire, Dr. Colby indicated that he could not determine if Heston would have trouble with any of the physical activities indicated on the form. (*Id*. at 115).

Heston became a patient of Dr. Stephen Stansbury in January, 1995. Though Dr. Stansbury did not treat Heston during the disability period at issue, he did continue her treatment for chronic bronchitis. (*Id*. at 148-50). In December, 1995, Dr. Stansbury ordered a C.T. scan of Heston's lung to determine whether she again had bronchiectasis. (*Id*. at 151). The scan indicated that the scarring of Heston's left lung had not changed since a previous examination, and that there was no evidence of renewed bronchiectasis. (*Id*.).

On October 15, 1996, Dr. Raj Tripathi conducted an examination of Heston at the request of the ALJ. Dr. Tripathi noted Heston had bouts of upper respiratory tract infection

which had been treated successfully, exertional dyspnea, high blood pressure controlled by medication, occasional heart palpitations, and a history of arthritic symptoms. (*Id*. at 153-54).

Dr. Tripathi concluded that Heston's heart had "PMI palpable in the 5th intercostal space medial to the midclavicular line. No palpable thrill. S1 and S2 normal quality. No murmurs, no rubs, and no gallops." (*Id*. at 155). Examining Heston's lungs, Dr. Tripathi found "minimal crepitation at the bases." Dr. Tripathi conducted extensive range of motion studies, in which he found Heston's abilities to be normal. (*Id*. at 157-62). He found that Heston could lift thirty pounds occasionally. (*Id*. at 160). He found that she could stand for four to five hours in a eight-hour workday, stand for thirty minutes without interruption, and sit for one hour without interruption. (*Id*. at 160). Dr. Tripathi determined that Heston could never climb, kneel, or crawl, and could balance and stoop only occasionally. (*Id*.). Finally, he noted that Heston's exposure to heights, moving machinery, temperature extremes, dust, fumes, humidity and vibration should be restricted. (*Id*. at 161).

Dr. Tripathi also conducted a pulmonary functions test from which he concluded that Heston had "minimal obstructive lung disease." (*Id*. at 162).

### C. Heston's Hearing Before the ALJ

On April 28, 1997, Heston testified before the ALJ and a vocational expert about her medical history and daily activities. Heston testified that, as an employee of Tyson Dry Cleaners, she had served as a presser and dry cleaner, and had operated the cash register. (*Id*. at 38-40). She said that she suffered from bronchitis between six and seven times a year, and that she had spells of pancreatitis depending upon fluctuations in her diet. (*Id*. at 41-43). She described having arthritis pain in her hips and ankles during bad weather and when standing on cement. (*Id*. at 45-47). Heston stated that her breathing problems had worsened since 1994. (*Id*. at 47).

A review of Dr. Haun's report does not mandate a reversal of the ALJ's decision that Heston is not disabled. First, in the report written on August 1, 1995, Dr. Haun admits that he had no current information on Heston. Dr. Haun provided none of Heston's medical records (which he admits are no longer within his control), and does not provide any objective basis for his conclusions. According to the regulations, a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2).

More important, Dr. Haun's report was based on a summary of Heston's medical history, as his last examination of Heston was in February of 1992. Heston's medical status for disability in this case is between November 17, 1992, and June 30, 1994. Although medical history is relevant to a claimant's condition, Heston's medical history should not be given more weight than that of a doctor observing plaintiff during the relevant period of disability. As the record demonstrates, and the ALJ observed, Dr. Colby examined Heston during the relevant period, and concluded that Heston was not suffering from any serious impairment. (J.A. at 141-114).

Dr. Haun's report also indicates Heston would have difficulty standing, bending, lifting, or carrying objects in an employment setting. (*Id*. at 113). During the administrative hearing, the hypothetical posed by the ALJ to the vocational expert described a person who could not lift more than thirty pounds, who should not repeatedly bend or constantly stand, and who could not climb, crouch, kneel or crawl. (*Id*. at 60). The ALJ, therefore, considered Heston's limitations described by Dr. Haun in the hypothetical posed to the vocational expert. The vocational expert concluded that there were jobs in the area, taking into considerations the limitations, that could be performed. (*Id*.).

A review of Dr. Haun's report does not mandate a reversal of the ALJ's determination that Heston was not disabled.

two. We consider, accordingly, Heston's claims on their merits.

### B.  The ALJ Did Not Commit Reversible Error By Not Explicitly Considering Dr. Haun's Report

Heston argues that the ALJ committed reversible error by failing to discuss Dr. Haun's three-page summary of Heston's medical history in the decision.  Heston argues that, because the ALJ failed to provide an explanation of the weight given to Dr. Haun's opinion, the ALJ's decision must be vacated. Although the Commissioner must provide a statement discussing the evidence and reasons on which the decision is based, 42 U.S.C. § 405(b)(1), we find that the ALJ's omission of any discussion of Dr. Haun's report was harmless error.

Judicial review of the Secretary's findings must be based on the record as a whole.  Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council. *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), questioned on other grounds by *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The court may review Dr. Haun's report, in its consideration of the record as a whole, to determine if the ALJ's decision was based upon substantial evidence, even if the ALJ failed to cite the report in its conclusion.[1]

---

[1]Heston cites *Morehead Marine Serv. v. Washnock*, 135 F.3d 366 (6th Cir. 1998), for the proposition that an ALJ's failure to provide an adequate explanation for his findings of fact mandates a reversal.  In *Morehead*, however, the ALJ explicitly stated that he relied on a doctor's observation of which there was no evidence in the record.   The court remanded for an explanation of the record, because the ALJ relied upon a statement not present in the record.  The proposition is not applicable to the present case.  In this case, the ALJ allegedly failed to rely on a report that was *in the record*, instead of basing his decision on a doctor's report that could not be found in the record.

Heston told the ALJ that she could walk for one block before "puffing" and could sit for twenty to thirty minutes without interruption. (*Id*. at 48).  She stated that she "didn't want to lift" more than ten to fifteen pounds. (*Id*.).  Around the house, Heston stated that she loads the dishwasher, sweeps with a vacuum cleaner, does laundry in her washer and dryer, goes grocery shopping, and makes her bed. (*Id*. at 49).  She also rides an exercise bicycle, on the "zero" setting, for five to ten minutes, "not quite every day" to help her arthritis. (*Id*. at 50-51).

During the hearing, a vocational expert briefly evaluated Heston's employment history.  The expert classified Heston's work as a dry cleaning counter clerk as "light and semiskilled," her work as a clothes presser as "light and unskilled," and her work as a dry cleaner as "medium and semiskilled." (*Id*. at 59).  The ALJ proposed a hypothetical set of work limitations to the vocational expert for evaluation. The ALJ described the hypothetical person as possessing: "a lifting limit of thirty pounds, alternating positions, not climbing, crouching, kneeling, crawling.  Not working at heights with moving machinery.  With a clean environment and no temperature extremes." (*Id*. at 60).

Based on the hypothetical, the expert stated that there were approximately 3,600 jobs in the Dayton/Cincinnati area that a person with those restrictions could perform, including rental clerk, photocopying machine operator, and marker. (*Id*. at 60-61).  The ALJ then asked if the variable of a thirty-pound lifting limitation significantly extended the hypothetical individual's job opportunities.  The expert responded that she had only considered a lifting limitation of twenty-five pounds, but that a thirty-pound limitation would extend the individual's range of potential jobs. (*Id*. at 61-62).

### ANALYSIS

Judicial review is limited to determining whether the district court erred in finding that the ALJ's ruling was supported by substantial evidence. *Cohen v. Dep't of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Social Security Act provides that findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Heston can receive benefits only if she is deemed "disabled" under the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)(1988). A person is "disabled" under the Social Security Act if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work . . . ." 42 U.S.C. § 423(d)(2)(1988).

The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (*citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbot*, 905 F.2d at 923.

## A. Cross-Waiver

Heston raised identical claims before the Magistrate Judge, District Judge, and this court, challenging the ALJ's step four and step-five findings. The Commissioner argues that, before Heston's challenges to the findings at the fourth and fifth steps can be considered, she must have also challenged the finding of no severe impairment at step two. Because she has not done so, the Commissioner argues, she is foreclosed from review on the merits by this court of her challenge to the findings at steps four and five.

We hold that the Commissioner cannot rely on any waiver by Heston to foreclose consideration of her claims on the merits, because the Commissioner failed to bring Heston's waiver to the attention of the Magistrate Judge or the District Judge. As a result, neither the Magistrate Judge nor the District Judge had the opportunity to consider the Commissioner's argument that Heston's failure to challenge the step two determination foreclosed her challenge to the ALJ's findings at steps four and five.

The Commissioner's claim of waiver violates the fundamental principle that the trial court must be presented with an opportunity to review an argument before it may be raised on appeal. *E.g.*, *Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000) (parties may not raise new arguments or issues at the district court stage that were not presented to the Magistrate Judge); *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) (respondent waived review of issue of petitioner's procedural default by not objecting to petitioner's original claim before the Magistrate Judge); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (party "has a duty to put its best foot forward" before the Magistrate Judge in order to present the issue at a subsequent appeal).

As a result of its own waiver, the Commissioner is precluded from arguing that Heston's challenges to the ALJ's findings at steps four and five cannot be considered due to her failure to assert a challenge to the predicate finding at step