Donald K. HICKS, Plaintiff–Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant– Appellee.

No. 03–5507.

United States Court of Appeals, Sixth Circuit.

July 27, 2004.

James Roy Williams, Young, Reverman & Mazzei, Cincinnati, OH, for Plaintiff–Appellant.

John S. Osborn, III, Asst. U.S. Attorney, U.S. Attorney's Office, Lexington, KY, Laurie G. Remter, Dennis R. Williams, Mary Ann Sloan, Brian C. Huberty, John C. Stoner, Office of General Counsel, Atlanta, GA, for Defendant–Appellee.

Before KEITH, CLAY, and GIBBONS, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff Donald K. Hicks appeals the February 21, 2003 order of the United States District Court denying his motion for summary judgment, granting Defendant Commissioner of Social Security's motion for summary judgment, and upholding the Commissioner's administrative decision that Hicks is not entitled to disability insurance benefits and Supplemental Security Income pursuant to 42 U.S.C. §§ 423 & 1382. For the reasons that follow, we REVERSE the judgment of the district court and REMAND to the Social Security Administration for reconsideration of Hicks' benefit claims without regard to Social Security Ruling 85–15.

## I.

Donald Hicks, who suffers from chronic obstructive pulmonary disease, asthma, gastroesophageal reflux disease, a seizure disorder, hypertension and who has a history of Hodgkin's lymphoma, filed applications for disability insurance benefits and supplemental security income on September 16, 1994. A favorable decision was issued on September 25, 1995, finding Hicks disabled as of September 2, 1994. Hicks' benefits were ceased, however, because of income and resource limits and because he was incarcerated. Hicks filed another application for disability benefits on April 6, 1999 and an application for supplemental security income on March 29, 1999. Hicks alleged an inability to work beginning September 2, 1994, due to asthma, epilepsy and high blood pressure. After both applications were denied, a hearing was held before Administrative Law Judge Charles J. Arnold ("the ALJ"). On July 24, 2000, the ALJ denied Hicks' applications for benefits. Hicks appealed the ALJ's decision to the Appeals Council, which found no basis for challenging the ALJ's decision. Thereafter, Hicks sought review of the ALJ's decision in the United States District Court. On February 21, 2003, after entertaining cross-motions for summary judgment, the district court ruled in favor of the Commissioner.

## II.

### A. Standard of Review

This matter is on appeal from the district court's grant of the Commissioner's motion for summary judgment and the denial of Hicks' motion for summary judgment. This Court "reviews the district court's conclusion in social security cases de novo, and directly reviews the [Commissioner's] findings and conclusions as if it were the first reviewing court." Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990).

Review of the underlying findings of the ALJ is limited to determining whether the findings of the Commissioner are supported by substantial evidence, *id.*, and whether the correct legal standards were applied. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir.1990). "The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997) (citing *Crum*, 921 F.2d at 644).

**B. Hicks' Impairments**

To qualify for Social Security disability benefits, an individual claimant must be "under a disability." 42 U.S.C. § 423(a)(1)(E). For purposes of this case, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The physical or mental impairment or impairments must be of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.*

§ 423(d)(2)(A). To determine whether the claimant's impairments are sufficiently severe, the Commissioner of Social Security must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B).

The Commissioner's disability determination follows a five-step process. *Abbott v. Sullivan*, 905 F.2d at 923. As this Court previously explained:

First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Abbott*, 905 F.2d at 923 (*citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)).

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).[1]

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

---

1. When the claimant has an impairment(s) which meets the duration requirement and is listed in Appendix 1 (Part A) to 20 C.F.R. part 404, subpt. P, or is equal to an impairment listed in that Subpart, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(d) (2002). The listings set out at Appendix 1 (Part A) "are descriptions of vari-

ous physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529–530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530, 110 S.Ct. 885.

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott,* 905 F.2d at 923. *Heston v. Commissioner of Social Sec.,* 245 F.3d 528, 534 (6th Cir.2001).

■ Hicks argues that the ALJ erred at the third step of the analysis, claiming that his impairments meet or equal an impairment listed in Appendix 1 (Part A) to 20 C.F.R. part 404, subpt. P and, therefore, argues that he has an impairment that should be presumed to be of sufficient severity to prevent the performance of work. We disagree for the reasons discussed below.

To determine whether an impairment is medically equivalent to an impairment listed in Appendix 1, the Commissioner "compare[s] the symptoms, signs, and laboratory findings about [the claimant's] impairment(s) ... with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526(a). If there is "more than one impairment, and none of them meets or equals a listed impairment, [the Commissioner] will review the symptoms, signs, and laboratory findings about [the claimant's] impairments to determine whether the combination of [the claimant's] impairments is medically equal to any listed impairment." *Id.* "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."

*Zebley,* 493 U.S. at 530, 110 S.Ct. 885 (emphasis in original; citation omitted).

Hicks argues that he met or equaled impairments numbers 11.02 (epilepsy with major motor seizures) and 11.03 (epilepsy with minor motor seizures) from Appendix 1. To prove the application of either convulsive disorder, Hicks was required to provide "[a]t least one detailed description of a typical seizure," with such description including "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R. pt. 404, subpt. P, App. 1 (Part A) at 11.00. In the case of 11.02 (major motor seizures), the seizures must be documented by EEG[2] and must occur more frequently than once a month. *Id.* at 11.02. In the case of 11.03 (minor motor seizures), the seizures must be documented by EEG[3] and most occur more frequently than once weekly. *Id.* at 11.03. "Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." *Id.* at 11.00.

Although Hicks was diagnosed with a seizure disorder, the record does not show that he was ever diagnosed with epilepsy. Rather, Hicks was diagnosed with "seizure disorder unspecified" in 1995. In 2000, Hicks' physician opined that his seizures are "secondary to a vagal syncope caused by coughing as opposed to epilepsy." Moreover, an EEG conducted in 2000 revealed "no definite epileptiform abnormalities. Further, since there was no record of professional observation of one of Hicks' seizures, Hicks was required to provide a

---

**2.** Although not discussed by the parties, effective May 24, 2002, the Commissioner no longer requires that an EEG be part of the documentation needed to support the presence of epilepsy. *See* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed.Reg. 20,018, 20,019 (Apr. 24, 2002) ("Technical Revisions"). The Technical Revi-

sions note that "it is rare for an EEG to confirm epilepsy in its other forms for either adults or children." *Id.* Since Hicks' hearing before the ALJ took place in 2000, his claim was subject to the EEG requirement. He has not argued to the contrary.

**3.** *See* note 2, *supra.*

detailed description of a typical seizure from someone other than himself. This he did not do. The only description of Hicks' seizures in the record appears in the transcript of the hearing before the ALJ. Only Hicks himself testified at that hearing. His description of his seizures was very general, referring only to the frequency of his seizures and stating that they cause his upper body to shake and/or force him to the ground and cause unconsciousness. Although he referred to an injury associated with one seizure, he never described the presence or absence of aura, tongue bites, sphincter control, and other post-seizure phenomena. For these reasons, there was substantial evidence supporting the ALJ's finding that Hicks' did not meet or equal the disabling impairments described in parts 11.02 and 11.03 of Appendix 1.

The ALJ also found that Hicks' seizures were reported in the objective medical record to be about only one per month. According to the August, 1999 Physical Residual Functional Capacity Assessment, Hicks told his examining physician that he has one major motor seizure per month. At the ALJ hearing, Hicks testified that he suffers from about four seizures a month,[4] some intense, some mild, but he never specified how many of those seizures are major motor seizures. Thus, the ALJ properly could rely on the August, 1999 Assessment to conclude that Hicks suffered from no more than one such seizure per month, which is insufficient to equal impairment 11.02. In addition, since

Hicks testified that he suffered about four seizures a month, he did not equal impairment 11.03, which requires more than one minor motor seizure per week (i.e., more than four a month). For these reasons as well, the ALJ's findings were supported by substantial evidence.

Hicks further argues that the ALJ was required to have medical input from a physician designated by the Commissioner before considering whether Hicks met or equaled listing 11.02 or 11.03, but that the Commissioner failed to do so. See 20 C.F.R. § 404.1526(b) ("We will ... consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."). In fact, the Commissioner did solicit professional input on medical equivalence, input which was in the record before the ALJ. See Tr. at 40, 41, 178–202 (Disability Determination forms signed by two different physicians indicating that Hicks is not disabled). Thus, the record shows that the Commissioner fully complied with § 404.1526(b). See Social Security Ruling 96–6p, 61 Fed. Reg. 34,466, 34,468 (July 2, 1996) ("The signature of a State agency medical or psychological consultant on an SSA831–U5 (Disability Determination and Transmittal Form) ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.").

**4.** Hicks argues to this Court that in April, 2000, he told his physician that he suffered from 15 seizures per month, citing his physician's notes. See Tr. at 212. We believe that Hicks has misinterpreted his doctor's notes. The doctor's note is ambiguous and may well indicate that Hicks had suffered from 15 or more seizures per month when Hicks was in his 20's, before he began any treatment regimen. Hicks also cites to his statement in

April, 1999 that he had suffered 28 seizures in the preceding 12 months. See Tr. at 83. This statement is problematic, however, because it fails to distinguish between major and minor motor seizures. Thus, it is impossible to tell whether the seizures meet the frequency requirements of 11.02 or 11.03. In any event, it was reasonable for the ALJ to credit Hicks' more recent, August, 1999 pronouncement about the frequency of his seizures.

■ Last, Hicks challenges the ALJ's finding that Hicks' statements about his impairments and their impact on his ability to work were not entirely credible. The ALJ made this credibility determination in light of the degree of medical treatment required and the reports of the treating and examining practitioners and the findings made on examination. According to Hicks, the ALJ should have found his testimony about the frequency and intensity of his seizures credible because the Commissioner found him disabled in 1995 and because the physician who examined him at the Commissioner's request in 1999 purportedly found Hicks' descriptions of his seizures to be credible.

We reject Hicks' arguments for several reasons. First, the fact that the Commissioner found Hicks disabled in 1995 does not estop the Commissioner from reaching a different conclusion years later, when Hicks' medical condition has changed. When the Commissioner approved Hicks' application for disability benefits and supplemental security income in 1995, Hicks was suffering from Hodgkin's disease, he was being treated with chemotherapy, and his overall prognosis was uncertain. His Hodgkin's disease was a significant, if not the primary, factor motivating the Commissioner's approval of his claims. By contrast, the claims at issue herein did not involve Hicks' Hodgkin's disease, which is in full remission.

Second, Hicks' reliance on the August, 1999 Physical Residual Functional Capacity Assessment is misplaced. There, the examining doctor stated, "The claimant alleges that he has seizures that limits [sic] his ability to drive. The claimant does have a medically determinable impairment and his symptoms and limitation is [sic] considered credible." This credibility assessment, however, has nothing to do with the purported frequency of Hicks' seizures. And as to severity, the statement indicates that the seizures limit Hicks only from driving. As a result, the examining doctor found Hicks not to be disabled and indicated virtually no limitations on Hicks, only that he should not drive or work at heights or around fast-moving machinery. The examining doctor's credibility finding hardly supports Hicks' assertion that the ALJ should have found Hicks to be disabled based on the August, 1999 Assessment.

The ALJ appropriately assessed Hicks' testimony about his impairments and compared it to the medical documentation concerning his physical condition. Substantial objective evidence (chest x-rays, the EEG, diagnostic tests, examinations, the Residual Functional Capacity Assessments) supported the ALJ's finding that, although Hicks has asthma and a seizure disorder, these impairments are not disabling and that he was limited only with respect to lifting, driving, and working around certain machinery. In addition, the ALJ properly could rely on Hicks' activities (washing dishes and watching his kids) as well as his demeanor at the hearing to assess the credibility of his testimony. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990) (holding that the ALJ had a basis to discount the claimant's credibility because some of his activities were inconsistent with his claims of disabling pain; holding, as a matter of law, that an ALJ may consider household and social activities in evaluating complaints of pain); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir.1987) ("Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference.").

■ Based on his well-supported credibility determinations and the objective medical documentation (particularly, the

Physicial Residual Functional Capacity Assessments), the ALJ concluded that Hicks retains the residual functional capacity to perform light work and needs only to refrain from jobs that expose him to pulmonary irritants or dangers, such as heights and fast-moving machinery. We see no basis to overturn this determination under the deferential substantial evidence standard.

## C. Hicks' Ability to Work

The fourth step of the Commissioner's disability determination process required the ALJ to determine whether Hicks' impairments prevented him from doing his past relevant work. The ALJ so found. Accordingly, the ALJ proceeded to the fifth and final step, and determined whether other work exists in the national economy that Hicks can perform. To make this determination, the ALJ consulted the Medical–Vocational Guidelines set forth at Appendix 2 of 20 C.F.R. pt. 404, subpt. P. Appendix 2 "reflects the analysis of the various vocational factors (i.e., age, education, and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work." 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(a). Appendix 2 contains three tables into which the ALJ is supposed to input the findings of fact regarding the claimant's vocational factors (age, education, previous work experience) and residual functional capacity (sedentary work only, light work, or medium work). Depending upon the applicable table and the claimant's particular combination of vocational factors, the claimant is categorized according to a particular "rule." Whether or not the claimant is disabled is contin-

gent upon the particular rule under which he falls.

The tables are not necessarily applicable when the claimant does not have a limitation in meeting the strength, or "exertional," requirements of jobs. *Id.* § 200.00(e). For example, some impairments may result solely in postural and manipulative limitations or environmental restrictions, such as the inability to tolerate dust or fumes. When evaluating disability where the individual has solely a nonexertional type of impairment, the tables do not control. *Id.* § 200.00(e)(1). When an individual has a combination of impairments resulting in both strength limitations and nonexertional limitations, the tables are consulted in determining first whether a finding of disabled may be possible based on the strength limitations alone. *Id.* § 200.00(e)(2). If no such determination is possible, then "the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.*

As noted above, the ALJ properly found that Hicks retains the residual functional capacity to perform light work, which includes the functional capacity to perform sedentary work. *Id.* § 202.00(a). The light and sedentary work categories encompass approximately 1,600 occupations, representing numerous jobs in the national economy that can be performed after a short demonstration or within 30 days and which do not require special skills or experience. *Id.* The ALJ's finding regarding Hicks' residual functional capacity required him to refer to Table No. 2 (Maximum Sustained Work Capability Limited to Light Work). The ALJ further found

that Hicks is a "younger individual," as defined by the Medical–Vocational Guidelines, because he is 37 years old; that Hicks has a "limited" education, since he was educated only through the eleventh grade; and that Hicks has an unskilled work background. A straightforward application of these findings dictated the ALJ's finding that Hicks is not disabled under Rule 202.17 of Table No. 2.

The ALJ then found that Hicks' nonexertional limitations (his seizures and asthma) do not significantly reduce the range of work he can perform. According to the Physical Residual Functional Capacity Assessments, Hicks' seizures limited him from being near dangerous moving machinery, and his asthma required him to avoid excessive amounts of dust and other pulmonary irritants. The ALJ cited to a Program Policy Statement of the Social Security Administration that states:

> A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels.

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.

Social Security Ruling 85–15, *Titles II and XVI: Capability to Do Other Work The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* (1985) ("SSR 85–15"). Based exclusively on SSR 85–15, the ALJ ruled that Hicks' nonexertional impairments do not significantly reduce the range of work he can perform.

■ We hold that it was error for the ALJ to rely exclusively on SSR 85–15, which, as its title makes clear, applies to "solely" nonexertional impairments. *See Doneworth v. Shalala,* No. 94–4290, 1996 WL 26922, at *4 (6th Cir. Jan.23, 1996) ("The Secretary [of the U.S. Department of Health and Human Services] argues ... that SSR 85–15 does not apply to claimant since he has both exertional and nonexertional limitations and SSR 85–15 applies to cases where only a nonexertional limitation is present. We agree[.]") (following *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir. 1995) ("SSR 85–15 has no application to Roberts because she claims both exertional and nonexertional impairments[.]")); *accord Harpole v. Chater,* No. 96–5702, 1997 WL 306775, at *2 (6th Cir. June 5, 1997). Nor are we persuaded that SSR 85–15 was particularly instructive in this case. The above-quoted excerpt indicates only that height and dangerous machinery restrictions do not have a significant effect on work that exists "at all exertional levels." SSR 85–15 says nothing about a claimant like Hicks, who cannot perform work at all exertional levels, but is restricted to light and sedentary work. Similarly, the excerpt concerning a dust restriction relates to the "broad world of work," and is not confined to work available at Hicks's exertional level. Accordingly, we remand this case to the Social Security Administration for additional proceedings consistent with this opinion. *See Talbot v. Heckler,* 814 F.2d 1456, 1465 n. 6 (10th Cir.1987) ("A remand for some kind of additional proceedings would be appropriate where an ALJ made no findings as to nonexertional impairments or where minimal findings were not supported by adequate evaluation of the evidence in the record.").

We decline to opine whether, on remand, vocational testimony will be necessary to substantiate the restrictions that Hicks' nonexertional limitations pose on his ability to perform light and sedentary work. *Id.* at 1465 ("Arguably, only vocational testimony could have provided sufficient data

as to whether substantially all of the jobs in the light work category could accommodate the claimant's environmental restrictions."). It is sufficient to hold that the ALJ's determination was not supported by substantial evidence because it was based solely on an inapplicable policy statement.

### III.

Substantial evidence supported the ALJ's finding that Hicks' impairments did not meet or equal any impairment listed in Appendix 1 (Part A) to 20 C.F.R part 404, subpt. P. However, there was not substantial evidence supporting the ALJ's determination that there is other work in the national economy that Hicks can perform. We therefore REVERSE the judgment of the district court and REMAND to the Social Security Administration for reconsideration of Hicks' benefit claims without regard to Social Security Ruling 85–15.