NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0591n.06
Filed: August 17, 2006

No. 05-6466

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DEBORAH POWERS,                              )
                                             )
    Plaintiff-Appellant,                    )      ON APPEAL FROM THE UNITED STATES
                                             )      DISTRICT COURT FOR THE EASTERN
    v.                                      )      DISTRICT OF TENNESSEE
                                             )
COMMISSIONER OF SOCIAL SECURITY,             )
                                             )
    Defendant-Appellee.                     )

_____

BEFORE:  BOGGS, Chief Judge, GIBBONS, and GRIFFIN, Circuit Judges.

    GRIFFIN, Circuit Judge.

    Plaintiff-appellant Deborah Powers appeals the district court's judgment that substantial

evidence supports the decision rendered by an Administrative Law Judge ("ALJ") upholding

defendant-appellee Commissioner of Social Security's ("the Commissioner") denial of Powers's

application for disability insurance benefits. Powers contends that the Commissioner's decision was

not supported by substantial evidence, and, as a result, this court should remand the case to award

her benefits or, alternatively, for further proceedings pursuant to sentence four of 42 U.S.C. §

405(g). For the reasons that follow, we affirm.

I.

    Deborah Powers was born on February 15, 1953, and was forty-nine at the time of her

hearing before the ALJ. Powers completed high school and worked at a self-owned grocery store

for twelve years before stopping work on March 28, 2001, as a result of significant pain in her neck, arms, back, and legs. To alleviate her pain, doctors performed surgery on Powers's neck in July of 2001, which improved her condition but nonetheless required her to continue taking pain medication. Powers also suffers from diabetes, which she treats with two shots of insulin on a daily basis. Her feet likewise experience a "stinging, burning, [or] hurting" if she stands for too long. Powers is also a frequent smoker who smokes ten cigarettes every day.

Powers's typical day starts between 6:30-7:00 a.m. after roughly five hours of interrupted sleep.[1] Throughout the day, Powers, depending on her condition, sporadically performs various activities such as crocheting, grocery shopping for the household, cooking family meals, visiting with her sister-in-law, hanging laundry, attending church, and outdoor walking for roughly a mile and a half. To accomplish her daily tasks, however, Powers often requires the assistance of family or friends; for example, a friend often accompanied Powers to the grocery store to aid her in lifting heavy objects.[2]

In addition to her need for regular help to accomplish daily tasks, Powers's leg pain prevents her from sitting continually for any longer than between ten to sixty minutes. Periodically, her pain requires her to take pain medication, which correspondingly requires her to lie down for about thirty

---

[1]Powers averred that she rarely enjoys a restful night's sleep; indeed, her diabetes often requires her to get up and go to the restroom.

[2]Powers stated that she can only crochet for ten minutes at a time before she becomes too tired and risks exposure to headaches. She also has difficulty running the vacuum cleaner because any reaching aggravates the pain she experiences in her neck and lower back.

minutes at a time "[a] couple times a day." She can, however, stand for "about an hour" before needing to sit down.

As a result of the foregoing, Powers applied for disability insurance benefits on May 1, 2001, pursuant to Title II and Part A of Title XVIII of the Social Security Act. Her claim was denied initially and on reconsideration. Powers therefore timely requested a hearing before an ALJ, which was held on November 20, 2002, in Knoxville, Tennessee. After Powers proffered her testimony, the ALJ heard testimony from Michael Galloway, a Vocational Expert ("VE").

Galloway opined that, given her current condition, Powers would be unable to perform her past work at the grocery store because, in that position, she was required to lift bundles weighing upwards of fifty pounds. The ALJ and Galloway then engaged in the following colloquy, which is at the center of this dispute:

> Q:      Assume I were to find the Claimant was limited to a range of light work, and she would have limitations on the utilization of her neck and upper back to the degree that she would need a job that didn't require frequent turning of the hand – of the head, I'm sorry, or frequent moving of her head up and down, or, in fact, full motion of her neck. She was talking about, you know, driving – being able to turn around behind and see where she's driving. She would need a job that required  – that would allow her to not sit or stand more than an hour at a time without being able to move her position at least briefly for comfort. That she would need work that didn't require her to do more than occasional overhead reaching with either arm. And because of the breathing problems that she discussed, she would be precluded from work which would expose her to dust, fumes, smoke, chemicals or noxious gasses. And she would also need work that didn't expose her to a concentrated amount of temperature extremes or high humidity. Given these restrictions, and taking into account the Claimant's age, education, and prior relevant work experience, first of all, could she return to any of her past relevant work?

> A: Well, Your Honor, based on the hypothetical given, I believe that she would be unable to perform her past work activity.

> Q: Would there be any other kind of work that exists in the regional or national economy that she might be able to do?

> A: Yes, Your Honor.

> Q: Would you give us some example?

> A: Yes. Within the region, which I'm defining as being the Knoxville metropolitan statistical area, identified at the light level for the position of a door greeter, 145 in the region; in the national economy, 52,200. Also identified for the position of a garment sorter. Within the region, 185; in the national economy, 80,600. Also identified for the position of a ticket taker. Within the region, identified 100; for the national economy, 32,250. Also for the position of a packager. Within the region, 450; in the national economy 192,000. I believe these to be examples.

> Q: Assume I were to add to the last hypothetical that the Claimant would not be able to sit or stand in total – any more than a total of four hours in a regular eight-hour workday. With that limitation, would there be any additional – any work – [INAUDIBLE] work in the regional or national economy that she could do?

> A: No, Your Honor. Specifically, at that point, she would be unable to perform a standard workday and 40-hour work week, and, in my opinion, she would be unable to perform gainful activity at that level.

Based on the foregoing, the ALJ rendered a decision on January 27, 2003, denying benefits to Powers at Step Five of the sequential evaluation process. In doing so, the ALJ stated, in pertinent part, as follows:

> At the hearing, I presented the vocational expert, Michael Galloway, with a hypothetical question that included the following factors: a person with the same age, education, and vocational profile as Ms. Powers with the residual functional capacity for light work with the following limitations:[sic] no work requiring frequent turning of the head or full motion of the neck with the inability to sit or

stand each more than a total of 4 hours in an 8-hour work day or longer than one hour at a time; no more than occasional overhead reaching with either arm; no work requiring exposure to dust, fumes, smoke, chemicals or noxious fumes, temperature extremes or high humidity. The vocational expert replied that such an individual could perform many jobs, including: door greeter, garment sorter, ticket taker and packager. He testified that there are approximately 800 such jobs in the region where the claimant lives and about 357,000 such jobs existing throughout the national economy.

* * *

The claimant has the residual functional capacity for light work with the following limitations: no work requiring frequent turning of the head or full motion of the neck with the inability to sit or stand more than a total of 4 hours in an 8-hour work day or longer than one hour at a time; no more than occasional overhead reaching with either arm; no work requiring exposure to dust, fumes, smoke, chemicals or noxious fumes, temperature extremes or high humidity (20 C.F.R. § 404.1545).

After Powers filed a timely appeal of the ALJ's decision to the district court, the magistrate judge issued a report and recommendation on April 11, 2005, to affirm the ALJ's decision. The magistrate judge rejected Powers's contention that substantial evidence did not support the ALJ's finding that she could perform a range of light work because, according to the magistrate judge, "the plaintiff's numerous activities undercut her claims of disability." Powers, however, also asserted that the language of the ALJ's conclusion reflects that he concluded she is unable to sit or stand for more than four hours *total* in an eight hour work day. In response, the magistrate judge held that Powers read the ALJ's decision too narrowly; indeed, he stated, "the ALJ specifically stated that he was accommodating for an inability to sit or stand 'each' more than a total of 4 hours in an 8-hour day[.]"

Powers subsequently filed objections to the magistrate judge's report on April 19, 2005, to which the district court responded by issuing a memorandum opinion on September 7, 2005,

adopting the magistrate judge's recommendation. In her objections, Powers asserted that the magistrate judge inappropriately determined that the hypothetical questioned posed by the ALJ accurately portrayed her sitting and standing limitations. She further asserted that the "'inability to sit or stand for more than a total of four hours in an eight-hour workday,' as found by the ALJ, yielded vocational expert (VE) testimony that all jobs would be eliminated."

The district court responded by first taking issue with the magistrate judge's conclusion that "the ALJ specifically stated that he was accommodating for an inability to sit or stand 'each' more than a total of 4 hours in an 8-hour workday." Indeed, according to the court:

> This wording directly reflects the wording used by the Commissioner in her description of the residual function capacity (RFC) adopted by the ALJ. However, the actual wording of both Finding 4 and the ALJ's discussion of the claimant's RFC in the text of his decision was characterized as follows:
>
> > the inability to sit or stand more than a total of four hours in an 8-hour work day or longer than one hour at a time; . . .
>
> Tr. 29, 31. Plaintiff asserts that it is speculative to conclude that the ALJ intended to include the word "each" which may then have yielded jobs.

Notwithstanding its concerns regarding the consistency of the ALJ's decision, the district court concluded that, "in the context of the ALJ's decision to deny benefits, he reasonably contemplated plaintiff as capable of performing full time work." Accordingly, said the court, "[t]he evidence of record did not support the extreme limitations argued by the plaintiff."

This timely appeal followed.

II.

Powers renews her argument that the ALJ actually found that she is unable to sit or stand more than a total of four hours in an eight-hour workday. Notwithstanding this finding, Powers complains, "the [ALJ's] unfavorable decision cited jobs that were given in response to a different hypothetical which did not include this restriction." Indeed, according to Powers, the ALJ "relied on VE testimony which was not given in response to a hypothetical question that accurately described the plaintiff in all significant relevant respects." Thus, Powers concludes, the ALJ's omission impacted "the accuracy and reliability of the VE's testimony to such an extent that relief is warranted."

Cast in a similar light, Powers further contends that the ALJ's material omission compromised her due process rights. Specifically, she asserts that the district court's affirmation of the ALJ's determination that she could perform light work, despite the VE's testimony "appears to suggest that . . . discrepancies between that hypothetical and the ALJ's ultimate finding as to the claimant's [RFC] are harmless." Such an allowance, Powers avers, does not satisfy the requirements for a full and fair hearing.

Finally, Powers asserts that the district court erroneously adopted the Commissioner's inaccurate characterization of the ALJ's decision, which the Commissioner suggested for the first time on appeal to the district court. Although the Commissioner suggested that the ALJ accommodated for Powers's inability to sit or stand *each* more than a total of four hours in an eight-hour workday, Powers states that "[t]he actual wording of both finding 4 [of the ALJ's decision] and the ALJ's discussion in the text of his decision were identical." Thus, Powers concludes, "[t]o the

extent that the District Court ultimately relied on the RFC suggested for the first time in the Commissioner's brief to affirm the claim, this action was improper."

In reviewing the Commissioner's determination of whether an individual is disabled, we are limited to evaluating whether substantial evidence supports the ALJ's conclusion and whether the ALJ applied proper legal standards. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine whether substantial evidence exists, we must review the administrative record as a whole. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). We may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In this case, after the ALJ found that Powers did not have the residual functional capacity to perform her past relevant work, the burden shifted to the Commissioner to show that Powers retained the capacity to perform other substantial gainful activity that exists in the national economy. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). To satisfy the Commissioner's burden, there must be "a finding supported by substantial evidence that [Powers] has the vocational qualifications to perform specific jobs[.]" *O'Banner v. Sec'y of Health, Educ. &*

*Welfare*, 587 F.2d 321, 323 (6th Cir. 1978); *see Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (noting court is limited to evaluating whether substantial evidence supports the ALJ's findings of Powers's residual functional capacity and the availability of jobs in significant numbers that accommodate her limitations). In this circumstance, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

First, Powers complains that the ALJ found her capable of completing light work, despite adopting the VE's answer to a hypothetical which would eliminate her ability to perform any work. The record, however, does not support Powers's argument. Although not expressly stated, the ALJ's decision reflects his adoption of the VE's answer to the ALJ's first hypothetical. In that hypothetical, consistent with the record evidence, the ALJ asked the VE whether light work would be available to the hypothetical person who would (1) have limitations on the utilization of her neck and upper back; (2) not be required to sit or stand more than an hour at a time without being able to move her position at least briefly for comfort; (3) be required to do only minimal overhead reaching with either arm; and (4) not be exposed to dust, fumes, smoke, chemicals, noxious gasses, or temperature extremes. Although, given those restrictions, the VE concluded that such a person could not return to Powers's prior work, he nonetheless stated that a wide range of light work was

available to such a hypothetical person. For example, the VE noted that such an individual could obtain employment as a door greeter, garment sorter, ticket taker, or packager.

Second, Powers contends that the text and findings in the ALJ's decision omitted the word "each" and, as a result, the ALJ clearly adopted the VE's answer to the second hypothetical which would eliminate Powers's ability to perform any work. The text of the ALJ's decision, however, clearly reflects his intent to pose a hypothetical to the VE accounting for Powers's limitation on "sit[ting] or stand[ing] *each* more than a total of 4 hours in an 8-hour work day or longer than one hour at a time[.]" (emphasis added).[3] Although, in his conclusion, the fourth finding by the ALJ does not correspondingly include the word "each," the text of his decision, when read in the context of the record evidence, reflects that Powers is capable of performing light work like that suggested by the VE.

Finally, the record does not support Powers's claim that she could only sit or stand for a combined total of four hours per day. Indeed, Powers's daily activities of crocheting, grocery-shopping, cooking family meals, visiting with her sister-in-law, hanging laundry, attending church, and outdoor walking for roughly a mile and a half, belie any subjective claims of pain. *See Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) ("The ALJ may consider the household and social activities in evaluating complaints of disabling pain or other symptoms."); 20 C.F.R. § 404.1529(c)(3)(I). "Subjective claims of disabling pain must be supported by objective medical

---

[3]Given that the text of the ALJ's decision clearly reflects his use of the word "each," the district court's conclusion that no such word appeared in the discussion is confusing.

evidence in order to serve as the basis of a finding of disability." *McCoy v. Chater*, 81 F.3d 44, 47

(6th Cir. 1995) (citing *Casey v. Sec'y of HHS*, 987 F.2d 1230 (6th Cir. 1993)), *cert. denied*, 116 S.

Ct. 2557 (1996); *see* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.  No such objective medical

evidence exists in this case, and, as a result, the ALJ appropriately found that Powers is capable of

performing a wide range of light work.[4]

Affirmed.

---

[4]The ALJ rejected the opinion of Dr. Ausmus who "note[d] very severe limitations and restrictions upon the claimant's functioning ability from a musculoskeletal standpoint[.]"  The ALJ, however, concluded that "his opinion is inconsistent with other evidence in the record and is lacking in clinical and objective evidence in support of his opinion."

**JULIA SMITH GIBBONS, Dissenting.** I disagree with the majority's conclusion that the meaning of the Administrative Law Judge's ("ALJ") opinion is clear. In my opinion, the text of that opinion is irretrievably ambiguous and its conclusion is based on evidence not in the record.[5] The majority's interpretation of the opinion therefore constitutes impermissible fact-finding regarding Powers's disability. I therefore dissent and would remand this case to the Commissioner for reconsideration and clarification of the ambiguity in the ALJ opinion.

In rejecting Powers's claim for disability benefits, the ALJ relied heavily on the testimony of vocational expert Michael Galloway. As noted in the majority opinion, this testimony involved two opinions given in response to questions by the ALJ that included hypothetical factual findings. First, Galloway testified that if the court were to find Powers unable to "sit or stand more than an hour at a time without being able to move her position at least briefly for comfort," Powers would be employable in several positions. Second, when the court inquired as to the result if Powers "would not be able to sit or stand . . . any more than a total of four hours in a regular eight-hour workday," Galloway responded that Powers would then be "unable to perform gainful activity."

The ALJ's opinion relied on this testimony in concluding that Powers is not disabled. The ALJ revisited the hypothetical findings presented to Galloway, stating that the hypothetical required that Powers could not "sit or stand each more than a total of 4 hours in an 8-hour work day or longer than one hour at a time." This characterization of the hypothetical is inaccurate; the initial

---

[5] This is not to say that substantial evidence could not support the ALJ's finding that Powers is not disabled. The problem here is that the ALJ's finding is not supported by substantial evidence in this record.

hypothetical included no mention of a four-hour limit on each of standing or sitting, but rather merely limited the standing or sitting to one-hour increments. The only hypothetical that mentioned a four-hour limit was the second, which imposed a limit of four hours of sitting and standing combined.

The ALJ compounded the confusion by making a factual finding ("Finding Four") that Powers is unable "to sit or stand more than a total of 4 hours in an 8-hour work day or longer than one hour at a time." This finding materially differs from the ALJ's mischaracterization of the testimony. The ALJ's finding omitted the crucial modifier indicating whether Powers can work no more than four hours *combined* sitting and standing or if she can work no more than four hours sitting *plus* four hours standing.

The majority concludes from these facts that the ALJ clearly and unambiguously intended to find that Powers could work an eight hour day with no more than four hours each of standing and sitting. While the context of Finding Four could suggest such a result – and while this result is probably the ALJ's intent, given his conclusion that Powers is not disabled – this conclusion is fraught with ambiguity for several reasons. First and most important, the language in Finding Four precisely mirrors that used by the ALJ in the second hypothetical during Galloway's testimony – a hypothetical that would have resulted in a finding of disability. The plain meaning of this finding would thus counsel a finding that Powers is disabled. Second, the language in Finding Four differs from that used earlier in the opinion to describe the hypothetical facts. While the description of the hypothetical expressly used the word "each," the language of Finding Four drops that qualifier. We

should not read this omitted language into the factual finding, as the language difference is material and the addition of "each" would change the plain meaning of the factual finding. Finally, the ALJ mischaracterized the hypothetical upon which it based Finding Four. This mischaracterization introduced the 'four-hour-each' limitation that has produced this controversy. Not only was the four-hour-each limitation unsupported by record evidence, but it also seems that the ALJ adopted an element of the second hypothetical in creating it. The ambiguity of the source and effect of the four-hour language counsels against concluding that the ALJ reasonably intended to adopt its first hypothetical.

For these reasons, I would remand for clarification of the factual basis for the finding that Powers is not disabled.