**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 14a0515n.06**

**No. 13-2418**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| KAREN ENGEBRECHT, | ) | **FILED**<br>Jul 14, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant-Appellee. | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and SARGUS, District Judge.[*]

GRIFFIN, Circuit Judge.

Karen Engebrecht appeals an adverse decision of an Administrative Law Judge (ALJ) denying her Social Security Disability Insurance Benefits (DIB). The district court held that the decision by the ALJ was supported by substantial evidence based upon the proper legal standard and therefore granted summary judgment in favor of defendant Commissioner of Social Security. We agree and affirm.

I.

Engebrecht's claims are based on her numerous psychological ailments, most prominently severe depression. She has been treating with Dr. Sachin Nagarkar, a psychiatrist, for these conditions for many years. In addition to Dr. Nagarkar, Engebrecht regularly attends

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

sessions with Deborah Hastings, M.A., a licensed therapist. Hastings works for Bay Psychological Associates, a psychology practice run by William Nicholson, Ph.D. Both Dr. Nagarkar and Hastings opined repeatedly that Engebrecht's psychological conditions were permanent and serious. Hastings' opinions took the form of letters cosigned by her and Dr. Nicholson, although the record is devoid of any evidence that Engebrecht was ever treated by Dr. Nicholson. Engebrecht took a variety of medications for her conditions and in 1999 was even hospitalized as a result of her depression. Dr. Nagarkar and Hastings have stated that Engebrecht is incapable of any and all work. A consulting psychologist, Dr. Robert Plummer, agreed that Engebrecht's conditions were severe, but opined that she could work with restrictions on her interactions with coworkers and supervisors.

Engebrecht's prior employment consisted mainly of clerical work in various offices in Bay County, Michigan government, which she left due to her inability to cope with the stresses of those jobs. After she left the county government, Engebrecht had seasonal employment in the retail sector. In her spare time, Engebrecht enjoyed numerous activities such as horseback riding, rollerblading, and jazzercise. Dr. Nagarkar had encouraged Engebrecht to engage in physical activity.

At her hearing before the ALJ, Engebrecht testified, as did Michelle Robb, a vocational expert. Robb testified that a hypothetical person with Engebrecht's profile could not perform Engebrecht's past clerical work. However, Robb indicated that there were jobs that the hypothetical person could perform: low-stress jobs that would involve minimal contact with the public and only superficial contact with supervisors or coworkers. These jobs included dishwasher (for which there were 900 jobs in Michigan), inspector (for which there were 10,000 jobs in Michigan), and assembler (for which there were 34,000 jobs in Michigan).

The ALJ concluded that Engebrecht was not disabled and denied benefits. The ALJ's decision followed the standard five-step analysis prescribed by the Social Security Act:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. [*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)] (*citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)).
>
> Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)).
>
> Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).
>
> Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.
>
> For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott,* 905 F.2d at 923.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). At the first step, the ALJ determined that Engebrecht last met the insured status requirements of the Act in December 2003 and had not engaged in gainful activity from October 1997 through December 2003. At step two, the ALJ found that Engebrecht "had the following 'severe' impairments: (1) dysthemia with recurrent depression; (2) borderline intellectual function; and (3) personality disorder with avoidant features (20 C.F.R. 404.1520(c))." At the third step, the ALJ determined that Engebrecht did not meet or equal one of the listed impairments in regulations.

Next, the ALJ assessed Engebrecht's residual functional capacity (RFC), which is defined as the "most [a claimant] can do despite [the claimant's] limitations." 20 C.F.R. 404.1545(a)(1). The ALJ determined that Engebrecht

> had the maximal residual functional capacity . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: (a) [Engebrecht] was limited to simple, routine and repetitive work activities performed in a stable, low-stress environment; and (b) the claimant was maximally limited to superficial contact with supervisors and coworkers, and should not work with the general public.

In support of this conclusion, the ALJ noted:

> The undersigned [the ALJ] appreciates the input provided by Dr. [sic] Hastings and Dr. Nagarkar with regard to [Engebrecht's] mental difficulties, and, moreover, agrees with them that [Engebrecht] has significant mental difficulties with work-related activity. However, these difficulties appear to have manifested most starkly, and almost exclusively, in the context of a high-stress job which required significant interactions with less than sympathetic coworkers and supervisors. Though [Engebrecht's] baseline mental difficulties may not have improved significantly despite treatment, as these practitioners assert, the fact that [Engebrecht] was able to perform semi-skilled work for many years despite her mental symptoms (which, Dr. [sic] Hastings writes, have persisted since 1987) and the fact that [Engebrecht] remained capable of a wide range of activities outside her work [including horseback riding and jazzercise] indicate strongly that [Engebrecht] could perform her work activities with mental requirements of a far less strenuous nature than those at play in her previous job. [Engebrecht] appears capable of the range of mental work described in the above RFC. To the extent that [Engebrecht] and her treating sources suggest otherwise, the undersigned finds such allegations to be inconsistent with the evidence. The various statements of Dr. Nagarkar and Dr. [sic] Hastings have been given little relative weight as such, and [Engebrecht's] allegation that she is incapable of the range of mental work activities described above must be deemed not wholly credible.

At step four, the ALJ concluded that Engebrecht was unable to perform her prior clerical work, in light of Robb's testimony. At step five, the ALJ determined that through the date last insured, Engebrecht was capable of performing jobs that existed in significant numbers in the relevant regional economy. The ALJ therefore concluded that Engebrecht was not disabled.

Engebrecht filed suit in the district court seeking review of the ALJ's denial of benefits pursuant to 42 U.S.C. § 405(g). The district court granted summary judgment in favor of defendant Commissioner. Plaintiff now appeals.

II.

When confronted with an appeal under 42 U.S.C. § 405(g), "[t]his court must affirm the [ALJ's] conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Indeed, "[i]f the [ALJ's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When reviewing the ALJ's decision for substantial evidence, this court "may look to any evidence in the record, regardless of whether it has been cited" by the ALJ. *Heston*, 245 F.3d at 535.

This court reviews questions of law de novo. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). However, this court does not "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

III.

Engebrecht's first argument is that the ALJ misapplied the correct legal standards by "failing to give controlling weight to the opinions of [Engebrecht's] treating psychiatrist, Dr. Nagarkar, and to [Engebrecht's] treating therapist, Ms. Hastings, and in failing to note or assign a weight to the opinions of [Engebrecht's] . . . psychologist, Dr. Nicholson, or to County Medical Director Dr. Hurt."

A Social Security Administration (SSA) regulation, 20 C.F.R. § 404.1513, outlines the various types of evidence—medical and nonmedical—that a claimant may present in order to establish that he or she is disabled and entitled to DIB. In order to establish a disability, the SSA requires that the claimant present evidence from "acceptable medical sources." *Id*. at § 404.1513(a). Acceptable medical sources include "[l]icensed physicians[,]" and "[l]icensed or certified psychologists." *Id*. at § 404.1513(a)(1–2).

The SSA "classif[ies] acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

> A "nonexamining source" is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." [20 C.F.R.] § 404.1502. A "nontreating source" (but examining source) has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" her. *Id*. A treating source . . . has not only examined the claimant but also has an "ongoing treatment relationship" with her consistent with accepted medical practice. *Id*.
>
> * * *
>
> A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition."

*Id.* at 875–76.

Although the ALJ is required to "evaluate every medical opinion [he or she] receive[s]," 20 C.F.R. § 404.1527(d), "not all medical sources need be treated equally" by the ALJ. *Smith,* 482 F.3d at 875. To that end, an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. § 404.1527(d)(1). Under the "treating physician rule," the ALJ "'will' give a treating

source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Along those lines, "'[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996)). If the opinion of a treating source is not given controlling weight by the ALJ, the ALJ "'must apply' specified factors in determining what weight to give the opinion." *Hensley v. Astrue*, 573 F.3d 263, 266–67 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). These factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). And, if the ALJ gives the treating source's opinion other-than-controlling weight, the ALJ must give "'good reasons'" for having done so. *Hensley*, 573 F.3d at 267 (citing 20 C.F.R. § 1527(d)(2)). However, the "good reasons" requirement "only applies to *treating* sources." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010).

In addition to acceptable medical sources, the claimant may also present evidence from "other sources." 20 C.F.R. § 404.1513(d). "Other sources include, but are not limited to . . . medical sources not listed [as acceptable medical sources] (for example, nurse practitioners, physicians' assistants, . . . [and] therapists)[.]" *Id*. at § 404.1513(d)(1). This court has "previously held that an ALJ has discretion to determine the proper weight to accord opinions

from 'other sources' . . . ." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 530 (6th Cir. 1997). Although the opinions of "other sources" cannot establish the existence of a disability, their perspective should be given weight by the adjudicator and should be "evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Id*. (citing SSR 06-03P).

We first address Engebrecht's claim regarding Dr. Nicholson. In her appellate brief, Engebrecht expressly asserted that Dr. Nicholson was her treating psychologist. At oral argument, however, Engebrecht changed her position, conceding that Dr. Nicholson was not a treating source, but that the ALJ erred by failing to discuss Dr. Nicholson or assign any weight to his opinions. Engebrecht has accordingly abandoned her contention that Dr. Nicholson is a treating physician.

Dr. Nicholson is the director of Bay Psychological Associates, where Engebrecht regularly attended therapy sessions with Deborah Hastings. Dr. Nicholson's name appears on two letters, written on Bay Psychological Associates letterhead, which describes the treatment Engebrecht received. These letters, confusingly, were signed by both Hastings and Nicholson, despite using the first-person singular. According to Engebrecht, these two letters are sufficient to establish that Dr. Nicholson was a medical source and argues that the district court erred by failing to address Dr. Nicholson. We disagree.

Engebrecht has presented evidence of a relationship with therapist Hastings, but not with Dr. Nicholson. In fact, outside of his signature on the two letters co-signed by Hastings, she relies on no evidence related to Dr. Nicholson (nor were we able to locate any in the record). She does not refer to any therapy sessions with Dr. Nicholson, nor does she refer to any specific

treatment recommendations Dr. Nicholson made (nor were we able to locate any in the record). On a SSA form, on which Engebrecht was asked to list her doctors' names, she listed Dr. Nagarkar and "Deb Hastings [from] Bay Psychological" and made no mention of Dr. Nicholson. On another form, on which Engebrecht was asked to list "*each* Doctor/HMO/Therapist" she saw, Engebrecht listed "Deb Hastings" but makes no mention of Dr. Nicholson. (Emphasis added.) Similarly, Engebrecht asserted to consulting physician Dr. Plummer that she received "psychotherapy once every two weeks at Bay Psychological Associates from the [sic] woman there by the name of 'Deb,'" but did not mention Dr. Nicholson. Similarly, in his discharge summary from Engebrecht's hospitalization, Dr. Nagarkar noted that he had been her treating psychiatrist for eight years and that "[o]n top of that she has also been seeing a therapist—Mrs. Debbie Hastings at Bay Psychological." Dr. Nagarkar never mentioned Dr. Nicholson. Nor did Dr. Nagarkar mention Dr. Nicholson in any of his other treatment notes, although he did mention therapist Hastings. Nor does the record contain any independent treatment notes from Dr. Nicholson, though it does contain many such notes from therapist Hastings. Indeed, there is no indication that Dr. Nicholson ever saw Engebrecht at all, or that he reviewed her file. Accordingly, not only has Engebrecht failed to establish that Dr. Nicholson was a treating source, she has failed to establish that Dr. Nicholson was any kind of medical source as defined by the relevant SSA regulations. However, even assuming, arguendo, that Engebrecht had established that Dr. Nicholson was a medical source, we would conclude that any error by the ALJ in failing to expressly address Dr. Nicholson was harmless in light of the dearth of evidence regarding Dr. Nicholson's opinions and the abundance of evidence from additional medical sources.

Next, we address the opinions of Hastings. To the extent that Engebrecht argues that the ALJ erred by failing to give Hastings' opinions—as memorialized in the two co-signed letters, treatment notes, etc.—controlling weight, we disagree. Hastings' opinions were not required to be given controlling weight. Hastings' opinion—that of a therapist—is not properly classified as an "acceptable medical source" opinion but is an "other source" opinion. 20 C.F.R. § 404.1513(d). As an "other source" opinion, Hastings' opinion is not entitled to controlling weight, nor is the ALJ required to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources. *Ealy,* 594 F.3d at 514. However, it is apparent that the ALJ gave serious consideration to Hastings' opinions. He discussed her letters and treatment notes in detail. In fact, he agreed with Hastings'[1] opinion that Engebrecht could not return to her prior clerical work or a job which involved similar duties. He simply disagreed with Hastings' conclusion that Engebrecht was unable to perform *any* work. To the extent that this disagreement was shared by Dr. Nagarkar—who was a treating source—we will discuss this disagreement more in detail below. However, we are satisfied that the ALJ properly recognized that Hastings' opinions were "important and should be evaluated" and accordingly considered Hastings' opinions and gave them weight. *Cruse,* 502 F.3d at 541 (quoting SSR 06-03P). The ALJ accordingly satisfied his obligations under the Social Security Act with respect to Hastings' opinions.

---

[1]Engebrecht makes much of the fact that the ALJ referred to Hastings in his opinion as "Dr. Hastings." However, it is clear from a review of the ALJ's opinion that, despite misapplying the honorific "Dr.", the ALJ nonetheless considered the content of Hastings' opinions in both the letters and her treatment notes. Nor does Engebrecht cite any authority indicating that an ALJ misapplying an honorific is cause for remand. Accordingly, any error on this point is harmless.

Next, Engebrecht faults the ALJ for failing to give weight to the opinion of Dr. Howard Hurt, the Bay County Medical Director. We detect no reversible error. Dr. Hurt's sole contribution to the medical record was a letter from 1998 in which he opined that he thought that Engebrecht was totally and permanently disabled. However, contrary to Engebrecht's assertion, the ALJ did take notice of this letter; he simply erred in attributing its authorship to Hastings and Dr. Nagarkar, rather than Dr. Hurt. This court has previously held a similar error to be harmless. *Heston*, 245 F.3d at 535–36. And, in any event, the opinion in the letter is not a medical opinion at all, but a legal conclusion—that Hastings is disabled. As such, the ALJ was not required to give it any weight. *See* 20 C.F.R. § 404.1527(d)(1), (d)(3); *King v. Heckler*, 742 F.2d 968, 972–73 (6th Cir. 1984) ("disabled" is a legal conclusion). We therefore see no reversible error in this aspect of the ALJ's opinion.

We next turn to the opinion of Dr. Nagarkar. Engebrecht argues that the ALJ improperly weighed Dr. Nagarkar's medical opinions. We disagree.

There is no dispute that Dr. Nagarkar is a treating source. Accordingly, his opinion is entitled to controlling weight unless it is "inconsistent with other substantial evidence in [the] case record." *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(d)(2)). If the opinion of a treating source is not given controlling weight by the ALJ, the ALJ "'must apply' specified factors in determining what weight to give the opinion." *Hensley*, 573 F.3d at 266–67 (quoting 20 C.F.R. § 404.1527(d)(2)). These factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). And, if

the ALJ gives the treating source's opinion other-than-controlling weight, the ALJ must give "'good reasons'" for having done so. *Hensley*, 573 F.3d at 267 (citing 20 C.F.R. § 1527(d)(2)).

Here, the ALJ did give Dr. Nagarkar's opinion controlling weight insofar as Dr. Nagarkar opined that Engebrecht's impairments prevented her from returning to jobs that involved a higher-stress work environment or substantial interaction with the public or supervisors. However, the ALJ acknowledged that Dr. Nagarkar's opinions arose solely in the context of jobs that would trigger her mental health conditions. Accordingly, to the extent that Dr. Nagarkar's opinion was that Engebrecht could not perform *any* work, the ALJ did not err by failing to give controlling weight to this aspect of Dr. Nagarkar's opinion, in light of the substantial evidence in the record that Engebrecht was previously able to "perform [other, less stressful] semi-skilled work for many years despite her mental symptoms" which have "persisted since 1987" and the fact that Engebrecht "remained capable of a wide range of activities outside of work."

Contrary to Engebrecht's assertion, the ALJ did address the appropriate factors when determining what weight to assign to Dr. Nagarkar's opinion. For example, the ALJ addressed the "supportability of the opinion" and the "consistency of [Dr. Nagarkar's] opinion with the record as a whole" when he noted: (1) that Dr. Nagarkar's opinion arose in the context of Engebrecht's past work; (2) that Engebrecht previously had low-stress semi-skilled jobs that she had performed with no difficulty, (3) that Engebrecht's enthusiastic pursuit of recreational activities such as jazzercise and horseback riding were inconsistent with the assertion that Engebrecht could do no work at all; and (4) that Michelle Robb's testimony indicated that there were enough low-stress jobs in the regional economy such that Engebrecht could find employment. As for the other factors—the length, frequency, and nature of the treatment relationship, the ALJ acknowledged that Dr. Nagarkar had been Engebrecht's treating physician

since 1987, and that he had "handled her prescription medication regimen" during that entire time. Although the ALJ did not address these other factors specifically in the context of assigning a weight to Dr. Nagarkar's opinion, it is nonetheless obvious that the ALJ took all relevant factors into consideration when deciding what weight to give Dr. Nagarkar's conclusion that Engebrecht could not work any job. Accordingly, we conclude that there was no error on this point, and any error was harmless.[2]

Engebrecht also criticizes the ALJ for his conclusion that her pursuit of daily recreational activities, such as horseback riding, rollerblading, and jazzercise, were "dogged and even enthusiastic," which "belie[d] a degree of capability which outstrips the level of functioning portrayed in her treating practitioner's letters. They indicate, for instance, that [Engebrecht's] difficulties with concentration, attention and performance of simple or leisurely tasks are relatively minor." Engebrecht opines that the ALJ's "layperson assessment" contradicts the medical opinion of Dr. Nagarkar—who opined that these activities were therapeutic and necessary—and unsupported by substantial evidence. We disagree.

The ALJ credited and agreed with Dr. Nagarkar's opinion that there was therapeutic value to these activities. The ALJ simply found that the nature and extent of Engebrecht's

---

[2]Engebrecht does not appear to squarely claim that the ALJ did not provide good reasons for discounting Dr. Nagarkar's opinion. However, we note that, even assuming that Engebrecht did challenge Dr. Nagarkar's opinion on the "good reasons" requirement, there would be no basis to remand. "Good reasons" are merely reasons that are "supported by the evidence in the case record, and [that are] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (citation omitted). Here, the ALJ provided "good reasons" for the weight he assigned Dr. Nagarkar's opinion (i.e. Robb's testimony, Engebrecht's past work history, etc.). This court has previously held that so long as the ALJ's explanation is "sufficiently clear . . . the [ALJ's] failure to [specifically] label his explanation as 'good reasons' . . . [is] harmless error, at most." *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012).

participation in these activities was inconsistent with the limitations proposed by Dr. Nagarkar (i.e. no work of any kind), and, when taken with other evidence in the record, supported Engebrecht's ability to do low-stress work involving minimal contact with supervisors and the public. This analysis was consistent with the SSA's regulations. *See* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."). *See also Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (claimant's daily activities amounted to good reasons for discounting the treating source's opinion).

IV.

Engebrecht next takes issue with the ALJ's treatment of the 1998 consulting report of Dr. Plummer, arguing that the ALJ failed to discuss or assign a weight to Dr. Plummer's opinion or incorporate Dr. Plummer's opinion into Engebrecht's residual functional capacity assessment. We disagree.

Although the ALJ did not refer to Dr. Plummer by name, the ALJ cited Dr. Plummer's report and clearly took it into consideration; Engebrecht concedes not only that the ALJ acknowledged Dr. Plummer's report, but that the ALJ specifically acknowledged Dr. Plummer's conclusions that Engebrecht had borderline-low intellectual functioning. Moreover, Dr. Plummer did not conclude that Engebrecht could not work—he concluded that if she did work, her supervisors and coworkers would have to be sensitive to her mental health condition. The ALJ's residual functional capacity assessment is consistent with this recommendation—the ALJ concluded that Engebrecht was capable of performing simple, routine tasks in a low-stress environment with minimal contact with supervisors and coworkers. Moreover, the proposed restrictions by Engebrecht's treating source, Dr. Nagarkar—that Engebrecht not work at all—

were far more restrictive than the proposed restrictions by Dr. Plummer—that Engebrecht work, but with limitations. Accordingly, even if Engebrecht is correct that the ALJ failed to consider Dr. Plummer's opinion, any error is harmless.

V.

Finally, Engebrecht argues that the ALJ's conclusion that Engebrecht's impairments were "limited to her last work directly contradicts" the testimony of her medical sources. In other words, Engebrecht takes issue with the ALJ's conclusion that she could perform low-stress, semi-skilled work, but could not perform higher-stress jobs where she would interact regularly with supervisors, coworkers, and the public.

Despite Engebrecht's arguments to the contrary, the ALJ's conclusion was supported by substantial evidence. As the ALJ noted, all of Engebrecht's symptoms arose during her time performing clerical work—jobs with close interactions with supervisors and the public, sources of stress and anxiety for Engebrecht. And, as the ALJ noted, Engebrecht has demonstrated an ability to do low-stress, semi-skilled work despite her symptoms. Engebrecht even testified that an earlier clerical job for the Bay County Gypsy Moth program did not involve the same level of stress and anxiety she experienced in other clerical positions, such as in the finance and nursing departments, where Engebrecht testified she could not handle multiple large projects and the demands of supervisors. Engebrecht's own testimony is therefore consistent with the ALJ's conclusion. Accordingly, substantial evidence supports the ALJ's conclusion on this point. Because substantial evidence supports the ALJ's conclusion, this court must affirm. *Cutlip*, 25 F.3d at 286 ("If the [ALJ's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

VI.

For these reasons, we affirm.