**Rosanne Amato NOTO, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 15–1309.

United States Court of Appeals, Sixth Circuit.

Nov. 16, 2015.

244

BEFORE: SUTTON and KETHLEDGE, Circuit Judges; BECKWITH, District Judge.*

* The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

## OPINION

BECKWITH, Senior District Judge.

Plaintiff–Appellant Rosanne Amato Noto appeals the district court's judgment upholding the denial of her application for disability insurance benefits. We affirm.

## I.

In February 2007, Plaintiff–Appellant Rosanne Amato Noto filed an application with the Social Security Administration for disability insurance benefits based on impairments of chronic back and neck pain and chronic headaches. She alleged an onset date of disability of December 27, 2005. Plaintiff's impairments allegedly stem from an automobile accident that occurred in 2001.

Plaintiff's claim was denied. She requested and received an evidentiary hearing before an administrative law judge ("ALJ"), which took place in August 2009. In October 2009, the ALJ issued a written decision finding that Plaintiff is not disabled under the Social Security regulations because she has the residual functional capacity to perform her past relevant work as a customer care representative, a service department administrator, and a personal assistant to a vice president. The Appeals Council, however, remanded the case to the ALJ to re-evaluate the medical source evidence, Plaintiff's subjective complaints of pain, her maximum residual functional capacity, and her residual functional capacity vis-à-vis her past relevant work.

The ALJ held a second evidentiary hearing on Plaintiff's application in October 2011, during which Plaintiff and a vocational expert testified. During the hearing, Plaintiff testified that chronic, severe neck and back pain precludes her from performing almost all activities of daily living. Plaintiff testified that she is able to do some minor cooking, and can drive short distances, but has difficulty with most everything else, including eating and brushing her teeth. In fact, Plaintiff testified that her neck is so weak that she must support her head with one of her hands while eating. The ALJ, however, asked the vocational expert to assume that Plaintiff has the residual functional capacity to perform sedentary work with restrictions on environmental and noise exposure, use of ramps and stairs, and reaching, pushing, and pulling. The ALJ also stated that Plaintiff must have the ability to switch at will between sitting and standing. The vocational expert testified that this residual functional capacity would permit Plaintiff to perform her past relevant work as a customer service representative and as an administrative assistant.

In November 2011, the ALJ issued a second written decision denying Plaintiff's application at the fourth step of the sequential disability analysis on the grounds that she has the residual functional capacity to perform her past relevant work as a customer care representative and as an administrative assistant. The ALJ made an alternative finding at the fifth step that Plaintiff is not disabled because she has the residual functional capacity to perform other sedentary office clerk and general secretarial jobs that exist in significant numbers in the national economy.

The ALJ thoroughly summarized the medical evidence in arriving at Plaintiff's residual functional capacity. The ALJ, however, did not state the weight he assigned to each medical opinion. Nevertheless, it is evident from his decision that the ALJ assigned the greatest weight to the opinions of the state agency examining and consulting physicians. *Stacey v. Comm'r of Soc. Sec.*, 451 Fed.Appx. 517, 520 (6th Cir.2011) (ALJ not required to state weight given to opinion of a non-treating

physician, however, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning.") (internal quotation marks omitted).

Drs. Patel, Shelby–Lane, and Karo each performed consultative examinations of Plaintiff for the Social Security Administration. Dr. Patel's report, completed in May 2007, documented essentially unremarkable findings on examination of Plaintiff. He found "no physical or mental limitations" and concluded that Plaintiff was malingering. AR 388–395. Dr. Shelby–Lane examined Plaintiff and provided a report in May 2011. She concluded that Plaintiff has some limitations in reaching and pushing and pulling but otherwise is capable of performing sedentary work. AR 893–908. Dr. Karo examined Plaintiff and provided a report in July 2011. Dr. Karo's report is somewhat contradictory. At one point, she stated that Plaintiff has no limitations in sitting, standing, or walking, AR 994, but later she indicated that Plaintiff can only sit, stand, or walk for five minutes at a time. AR 1001. Dr. Karo otherwise indicated that Plaintiff is capable of performing light work with some environmental restrictions and restrictions on working around unprotected heights and moving machinery. AR 992–1005.

Dr. Mazhari treated Plaintiff for neck and back pain over about a four-year period. In August 2005, Dr. Mazhari wrote an office treatment note documenting an essentially normal physical examination of Plaintiff except for some mild to moderate cervical pain that was intermittent, increased with activity, but disappeared during the weekend. AR 341. Dr. Mazhari recommended that Plaintiff restrict flexion and extension of her neck. AR 343. The ALJ found that this restriction was "incompatible" with subsequent medical records showing improvement in Plaintiff's neck pain with steroid injections. AR 18. Additionally, in July 2002, Dr. Mazhari wrote an office note stating that Plaintiff should "stay away from over reaching [sic], pulling, and pushing frequently" due to neck and upper bilateral pain. AR 739. The ALJ, however, concluded that these limitations would not preclude Plaintiff from performing the work described at the evidentiary hearing. The ALJ also noted that Plaintiff was actually performing her past relevant work when Dr. Mazhari wrote this note. AR 17.

Plaintiff was also treated by Dr. Maltese (AR 612–618) and Dr. Easton (AR 404–419) for her neck and back pain. Dr. Maltese noted that Plaintiff has cervical and lumbar pain and radiculopathy but he did not indicate any functional limitations resulting from these symptoms.[1] Dr. Easton treated Plaintiff during and after her pregnancy. While Dr. Easton found severe degenerative disc disease at C3–4, a disc herniation at C5–6, and a herniated disc causing central canal stenosis at L4–L5, he likewise did not indicate any functional limitations resulting from these conditions. The ALJ noted both doctors' records in his decision, however. AR 19. Specifically, the ALJ cited Dr. Easton's treatment note recording that Plaintiff stated that she did not experience "a lot of" back pain during her pregnancy. AR

---

1. In June 2009, Dr. Maltese wrote "off work indefinitely" on a prescription pad. AR 618. As the district court aptly observed, we have previously held that this kind of one-sentence note does not qualify as a "medical opinion" under the Social Security regulations because it does not reflect a judgment about the nature and severity of the claimant's impairments. *Dunlap v. Comm'r of Soc. Sec.*, 509 Fed.Appx. 472, 476 (6th Cir.2012); *see* 20 C.F.R. § 404.1527(d)(1).

19.[2] The ALJ cited Dr. Maltese's January 2009 treatment note recording that physical therapy was helping Plaintiff's symptoms and that she was not taking any medication at the time. *Id.*

In May 2009, Dr. Syed evaluated Plaintiff for arthritis after a referral from Dr. Maltese. AR 609–611. Dr. Syed's findings were mostly normal except for some limited cervical and lumbar motion. He did not indicate any functional limitations in his notes. AR 611. The ALJ concluded that Dr. Syed's notes support Plaintiff's ability to perform sedentary work because of his essentially normal findings on physical examination and Plaintiff's report that her pain was controlled by epidural injections and heating pads. AR 20.

In October 2006, Plaintiff obtained a consultative examination from Dr. Zurawski. He concluded that Plaintiff's prognosis is guarded without surgical intervention. Dr. Zurawski stated that Plaintiff would not be able to perform the job duties of a secretary without substantial rest periods throughout the day. AR 304–306. The ALJ, however, rejected Dr. Zurawski's opinion on three grounds: 1) none of Plaintiff's treating physicians had indicated a need for rest periods during the work day; 2) the available medical records did not indicate that Plaintiff's impairments are severe enough to warrant the need for rest periods; and 3) Dr. Zurawski's opinion was contradicted by Dr. Patel's opinion. AR 18–19.

Dr. Herkowitz examined Plaintiff in July 2009. He provided a report indicating a largely normal physical examination of Plaintiff except for some pain on palpitation of the mid-and lower cervical spine and some restricted range of motion in the cervical and lumbar spine. AR 536. He stated that Plaintiff did not display any inappropriate pain responses. *Id.* Dr. Herkowitz also stated that he did not believe that surgical intervention would be beneficial because Plaintiff's symptoms are limited to chronic neck and back pain. AR 537. He seemed to endorse physical therapy and pain management to address Plaintiff's symptoms. *Id.* Dr. Herkowitz did not indicate any functional limitations in his report.

In March 2011, the ALJ sent Plaintiff for a functional capacity evaluation and report. Amy Modrich, a physical therapist, provided a report stating that Plaintiff has some functional capacity in the sedentary range, but that she would not be able to sustain an eight-hour work day due to severe pain in her back and neck which limits her endurance to about 15 minutes of activity. Modrich also stated that her evaluation of Plaintiff could be considered an accurate representation of her functional capacity based on her physiological responses and her movement and muscle recruitment patterns while aware and unaware of observation. AR 276–287. The ALJ, however, rejected Modrich's opinion because it was based on Plaintiff's subjective complaints of pain. The ALJ also noted that Modrich's opinion was contradicted by the opinions of state agency consultants finding that Plaintiff is not precluded from performing sedentary work. AR 20–21.

---

2. The ALJ actually wrote in his decision that Dr. Easton documented that Plaintiff said that she did not experience "any" back pain during her pregnancy. Plaintiff argues that the ALJ's misstatement shows that he inadequately evaluated Dr. Easton's records and that, therefore, the ALJ's decision is not supported by substantial evidence. We disagree. The difference between "any" and "not a lot of" is slight. The important and reasonable point the ALJ derived from Dr. Easton's note is that Plaintiff apparently did not complain about experiencing a disabling level of back pain during her pregnancy.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed a timely complaint in the district court for judicial review of the ALJ's decision. The parties then filed cross-motions for summary judgment. As is relevant to this appeal, Plaintiff contended that the ALJ committed numerous analytical and procedural errors in evaluating the record, particularly in regard to his treatment of the medical opinions. She also contended that the ALJ erred by not ascertaining whether any conflicts existed between the vocational expert's testimony and the job descriptions provided by the Dictionary of Occupational Titles ("DOT"). Because of these alleged errors, Plaintiff argued that the ALJ's decision was not supported by substantial evidence. A magistrate judge issued a report concluding otherwise, however, and recommended that the ALJ's decision be affirmed. The district court adopted the report and recommendation over Plaintiff's objections. Plaintiff filed a timely appeal from the district court's judgment.

## II.

We review *de novo* the district court's legal conclusion that the ALJ's decision was supported by substantial evidence. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir.2005). Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive if they are supported by substantial evidence. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir.2001). When deciding whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Instead, we consider the ALJ's decision determinative if there is "such relevant evidence as a reasonable mind might accept" as suffi-cient to support the ALJ's conclusion. *Foster*, 279 F.3d at 353. The substantial evidence standard is less exacting than the preponderance of evidence standard. *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir.1996). If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

## III.

We find no reversible error in the ALJ's analysis of the medical evidence and conclude that his decision denying Plaintiff's application for disability insurance benefits was supported by substantial evidence.

█ Plaintiff first argues that the ALJ violated Social Security Ruling 06–03p and 20 C.F.R. § 404.1513 in evaluating the opinion of physical therapist Amy Modrich. Section 404.1513 establishes two categories of medical evidence, "acceptable medical sources" and "other sources." Generally speaking, "acceptable medical sources" are licensed physicians and psychologists. 20 C.F.R. § 404.1513(a). The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a "treating source," a "non-treating (but examining) source," or a "non-examining source." *Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir.2007). "Other sources" is everyone else, including nurse practitioners, physician's assistants, and therapists. 20 C.F.R. § 404.1513(d)(1). More specifically, nurse practitioners, therapists, and the like are "non-acceptable medical sources." *See id.* The opinion of a "non-acceptable medical source" is not entitled to any particular weight or deference—the ALJ has discretion to as-

sign it any weight he feels appropriate based on the evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir.1997); *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 397–98 (6th Cir.2014).

Social Security Ruling 06–03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source. SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). This ruling recognizes that in some cases a non-acceptable medical source may have an insight as to the claimant's impairment that outweighs even a treating source's opinion depending on the nature of her treatment relationship with the claimant and the quality and supportability of her opinion. 2006 WL 2329939, at *5. Thus, "[o]pinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Moreover, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." *Id.* at *6. Finally, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that discussion of the evidence in the determination or decision allows a claimant and subsequent reviewer to follow the adjudicator's reasoning[.]" *Id.*

Modrich is a physical therapist. She is, therefore, a "non-acceptable medical source" and the ALJ was not required to give her opinion any particular weight. Social Security Ruling 06–03p, however, required the ALJ to consider Modrich's opinion, and he did. The ALJ provided appropriate reasons for discounting her conclusion that Plaintiff cannot sustain even sedentary work for an eight-hour work day. The most important reason cited by the ALJ, we think, is that Modrich's opinion is not consistent with the opinions of the state agency examining physicians. Although Modrich stated that Plaintiff cannot sustain sedentary work, near-contemporaneous opinions from Dr. Shelby–Lane and Dr. Karo indicate that Plaintiff's overall endurance is sufficient to perform sedentary work. We cannot conclude that Modrich's one-time evaluation of Plaintiff is so much more probative of the issue of disability than the opinions of the examining physicians that the ALJ violated Social Security Ruling 06–03p by not giving Modrich's opinion more weight than he did.

■ Plaintiff next contests the ALJ's overall treatment of the medical evidence, including the weight (or lack thereof) he assigned to the various medical opinions. We find no reversible error in the ALJ's analysis of the medical evidence, however. The only valid medical opinions from treating physicians were from Dr. Mazhari. The ALJ provided a "good reason" for discounting Dr. Mazhari's opinion that Plaintiff has restrictions on flexion and extension of her neck—subsequent medical records showed that Plaintiff's neck pain improved with injections. AR 309, 379, 474, 843, 857, 878; *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir.2009) (ALJ appropriately discounted treating physician's opinion because it conflicted with evidence demonstrating claimant's sustained improvement). Although the ALJ did not specifically state the weight he gave to Dr. Mazhari's other opinion, he did incorporate into his residual functional capacity Dr. Mazhari's restriction that Plaintiff should not engage in too much reaching, pushing, and pulling by limiting her to occasionally performing those activities. Therefore, the ALJ's failure to state the specific weight he gave this opinion is a

harmless error. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547–48 (6th Cir. 2004) (stating that the ALJ's failure to state weight given to a treating physician's opinion may be a harmless error where he adopts the opinion of the treating source).

The ALJ had a substantial basis for rejecting Dr. Zurawski's opinion because it was contradicted by the opinions of at least three other state agency examining physicians and by subsequent medical records. In addition to the opinions of the state agency consultants, the opinions of Drs. Herkowitz and Syed were consistent with the ALJ's determination that Plaintiff has the capacity to perform a limited range of sedentary work.

Nor did the ALJ commit harmful error by not discussing specific records indicating that Plaintiff received injections and had headaches. The ALJ adequately considered the same type of evidence and reasonably concluded that this type of evidence did not change his opinion. And the ALJ need not expressly mention every piece of evidence so long as the overall decision was supported by substantial evidence. *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir.1999); *see* 20 C.F.R. § 404.953. This one was.

While the overall record substantiates that Plaintiff does indeed have severe impairments resulting in chronic cervical and lumbar spine pain, the opinion evidence from acceptable medical sources consistently indicates that Plaintiff is capable of performing a reduced range of sedentary work. Consequently, there is substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled because she has the residual functional capacity to perform her past relevant work.

Since we have concluded that the ALJ's decision to deny Plaintiff's application at the fourth step was supported by substantial evidence, we need not address her contention that the ALJ committed errors at the fifth step of the disability analysis.

AFFIRMED.